IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                                                          PLAINTIFF

v.                                              Case No. 4:14-cr-40004

PHIL STUARD, JR.                                                                                     DEFENDANT

## ORDER

Before the Court is Defendant Phil Stuard's Motion to Reduce Sentence Pursuant to Section 603 of the First Step Act of 2018 ("FSA"). ECF No. 32. The Government has responded. ECF No. 36. The Court finds the matter ripe for consideration.

## BACKGROUND

On January 29, 2014, Defendant was named in a four-count indictment in the Western District of Arkansas. ECF No. 1. Count One of the indictment charged Defendant with distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and distribution of methamphetamine near a public housing authority facility in violation of 21 U.S.C. § 860(a). *Id*. On June 9, 2014, Defendant entered into a plea agreement in which he agreed to plead guilty to Count One. ECF No. 16. A Final Pre-Sentence Investigation Report ("PSR") was prepared that calculated a United States Sentencing Guidelines ("USSG") recommended sentencing range of 151 to 188 months imprisonment. ECF No. 23, p. 13. The Court granted a downward variance in Defendant's total offense level for his USSG calculation, which resulted in a sentencing range calculation of 121 to 151 months. [1] ECF No. 27, p. 1, 3. On November 3, 2014, Court sentenced

---

[1] The Court's granting of a two-level downward variance gave Defendant an offense level of 30, which then combined with his criminal history category of III to create a USSG sentencing range of 121-151 months imprisonment. ECF No. 27, p. 1, 3; U.S.S.G app. G.

Defendant to 121 months imprisonment with credit for time served in federal custody, six years of supervised release, and a $100.00 special assessment. ECF No. 26.

On December 10, 2020, Defendant filed his initial Motion for Compassionate Release. ECF No. 28. The Court subsequently appointed the Federal Public Defender to represent Defendant for any motions for release pursuant to the FSA. ECF No. 29. On March 15, 2021, Defendant filed his updated Motion to Reduce Sentence seeking release pursuant to the FSA. ECF No. 32. Defendant argues that his health issues combined with the ongoing Covid-19 pandemic and his current confinement create "extraordinary and compelling" circumstances justifying his release under 18 U.S.C. §3582(c)(1)(A). *Id*. at p. 6-11. Specifically, Defendant contends that his obesity and hypertension put him at an elevated risk of serious adverse health impacts if he contracts Covid-19. *Id*. at p. 9-11. Defendant further contends that the current conditions of his incarceration make contraction more likely. *Id*. at p. 7-9. Defendant also argues that his release is consistent with the required consideration of the statutory sentencing and public safety factors. *Id*. at p. 12-14. Defendant contends that his time served has achieved his sentence's deterrence purposes because he has served over seventy percent of his sentence. *Id*. at p. 12-13. He also claims that the pandemic has created a harsher sentence than initially anticipated. *Id*. Defendant further contends that he would not present a danger to the community if he is released because of his behavior during confinement and the stability he anticipates upon release. *Id*. at p. 13-14.

On April 7, 2021, the Government responded in opposition to Defendant's motion. ECF No. 36. The Government argues that Defendant's current circumstances are not "extraordinary and compelling" and do not warrant release. *Id*. at p. 6-23. The Government notes that the Bureau of Prisons ("BOP") has taken extensive steps to mitigate the spread of Covid-19 within its

2

facilities.[2] *Id*. at p. 6-11. The Government further contends that the risk posed by Covid-19 to Defendant is not severe because his hypertension has resolved and because he is fully vaccinated against Covid-19. *Id*. at p. 18-23. The Government also argues that even if Defendant's circumstances are extraordinary and compelling, the required consideration of the statutory sentencing and safety factors precludes his release. *Id*. at p. 26-28. Regarding the sentencing factors, the Government contends that releasing Defendant would undermine the serious nature of his crime and the deterrence effect of his sentence. *Id*. at p. 27. As for the safety considerations, the Government contends that Defendant's history as well as the nature and circumstances of Defendant's offense preclude early release. *Id*. at p. 26-27.

## DISCUSSION

Relief is available under the FSA if the Court finds: (1) that the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) that the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) that a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Before an analysis of those factors can begin, the Court must determine if Defendant has exhausted all administrative remedies available. 18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion of Administrative Remedies

The FSA provides two avenues for a defendant to bring a compassionate release motion to a district court. The defendant may either file a motion once he "has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring the motion on the

---

[2] These measures include, but are not limited to, increased screening of inmates and staff, suspension of social visits, operational modification to emphasize social distancing, and establishing quarantine areas. ECF No. 36, p. 6-11.

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

Defendant bears the burden of showing that he exhausted his administrative rights with the BOP before filing a compassionate-release motion. *United States v. Davis*, No. 2:15-CR-20067-SHM, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019).

The BOP has outlined the administrative exhaustion process in its Program Statement No. 5050.50. In short, a request for compassionate release must first be submitted to the warden of the BOP facility in which the defendant is housed. 28 C.F.R. § 571.61(a). If the warden approves the request, it is sent to the BOP's general counsel for approval. 28 C.F.R. § 571.62(A)(1). If the general counsel approves the request, it is sent to the BOP's director for a final decision. 28 C.F.R. § 571.62(A)(2). If the director approves, he or she will ask the United States Attorney in the applicable judicial district to file a compassionate-release motion on BOP's behalf. 28 C.F.R. § 571.62(A)(3).

If the warden does not respond to the request, the defendant's administrative remedies are deemed exhausted after thirty days. 18 U.S.C. § 3582(c)(1)(A)(i). If the warden denies the compassionate-release request, the defendant must appeal the decision pursuant to the BOP's Administrative Remedy Program. 28 C.F.R. § 571.63(a). If the request is denied by the BOP's general counsel or director, that decision is considered a final administrative decision and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b-c).

In this matter, Defendant requested release from his warden on January 19, 2021. ECF No. 32-1, p. 3. The warden denied his request that same day. *Id*. Defendant's appeal of the warden's denial was subsequently denied on February 11, 2021. *Id*. at p. 1. The Government does not dispute that Defendant has exhausted his administrative remedies and states that it believes the

Court has jurisdiction to consider Defendant's motion. ECF No. 36, p. 6-5. Accordingly, the Court finds that Defendant has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A)(i) and will consider his motion for compassionate release on the merits.

### B. Extraordinary and Compelling Reasons

The Court finds that Defendant has failed to show that there are extraordinary and compelling reasons justifying a reduction in his sentence and a release from confinement.

Pursuant to the FSA, the Court can grant Defendant's request for a sentence reduction "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress has not defined what constitutes "extraordinary and compelling" reasons, although it did note that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Thus, the Court looks to the Sentencing Commission's policy statement in the United States Sentencing Guidelines ("USSG") as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). *See id.*

The relevant policy statement contemplates a reduction in the term of imprisonment if "extraordinary and compelling reasons warrant the reduction." USSG § 1B1.13(1)(A).[3] This

---

[3] This policy statement predates the FSA and the Sentencing Commission has not since updated it or adopted a new policy statement. This creates an issue because parts of the pre-FSA policy statement do not square neatly with the language of the FSA. *See* U.S.S.G. § 1B1.13 (authorizing compassionate release only on the BOP's motion). Thus, it is unclear whether extraordinary and compelling reasons may be found only from the specific examples listed in the pre-FSA policy statement or if courts can look beyond those examples. Courts have answered that question with mixed results. *See United States v. Brown*, 411 F. Supp. 3d 446, 449-50 (S.D. Iowa 2019) (highlighting the debate regarding the outdated policy statement). However, at minimum, the pre-FSA policy statement provides guidance as to what constitutes extraordinary and compelling reasons. *See U.S. v. Schmitt*, 2020 WL 96904, at *3 (stating that various courts agree that even though the policy statement has not been updated, it nevertheless provides helpful guidance).

policy statement limits "extraordinary and compelling reasons" to only include the following four circumstances:

> (A) Medical Condition of the Defendant. –
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is –
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances. –
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Defendant argues that his health issues combined with his confinement and the ongoing Covid-19 pandemic create "extraordinary and compelling circumstances that justify his release under U.S.S.G. § 1B1.13 cmt. n.1(D)'s catch-all provision. ECF No. 32, p. 6-11. The Court is not persuaded. It is true that the two health conditions Defendant has or had, obesity and hypertension,

are listed by the Centers for Disease Control ("CDC") as risk factors for more severe illness upon contracting Covid-19. *See People at Increased Risk: People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 22, 2021). However, Defendant's vaccination status severely undermines his argument that he is at significant enough risk to warrant release. Records indicate that Defendant received his second does of the Pfizer-BioNTech Covid-19 vaccine on February 24, 2021. ECF No. 38-4, p. 13. Vaccination data indicates that mRNA Convid-19 vaccines, which Defendant received, are considerably effective at both protecting an individual from infection and preventing severe outcomes if infected. *See Science Brief: COVID-19 Vaccines and Vaccination*, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (last accessed June 22, 2021). The mRNA vaccines also seem to provide protection from a variety of identified variant strains of Covid-19. *See id*. This protection is bolstered by the measures the BOP has taken to prevent the spread of Covid-19 within its facilities. *See BOP Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed June 22, 2021). In light of this reduced risk of infection to Defendant, his situation cannot be viewed as posing a significant risk to his life and health. Accordingly, the Court finds that Defendant has not presented "extraordinary and compelling" circumstances that satisfy the requirements for release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

### C. § 3553(a) Sentencing Factors

Even if the Court found Defendant had presented an extraordinary and compelling reason for compassionate release, it would still deny release upon its evaluation of the sentencing factors under 18 U.S.C. § 3553(a).

That statute provides:

> (a) Factors To Be Considered in Imposing a Sentence. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
>> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> (2) the need for the sentence imposed—
>>
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> (B) to afford adequate deterrence to criminal conduct;
>>>
>>> (C) to protect the public from further crimes of the defendant; and
>>>
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>> (3) the kinds of sentences available;
>>
>> (4) the kinds of sentence and the sentencing range established for—
>>
>>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];
>>
>> (5) any pertinent policy statement [issued by the Sentencing Commission];
>>
>> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>>
>> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Defendant argues that the § 3553(a) factors favor his release because the ongoing pandemic creates a harsher sentence than initially anticipated and because his time served has achieved his sentence's deterrence purpose. ECF No. 32, p. 12-13. The Court is not persuaded. As to the pandemic creating a sentence that is now greater than necessary, the Court determined above that the circumstances with Defendant's medical conditions and the pandemic are not nearly as dangerous as he claims. With no significant change in the risks of his confinement established,

the Court finds that Defendant has not presented an adequate reason to view the sentence he received as now greater than necessary to achieve its deterrence purpose under § 3553(a)(2)(B). The Court notes that Defendant admits his conviction qualified him for the 121-month sentence he received and that he has served less than seventy-five percent of that sentence. ECF No. 32, p. 12. The Court further notes that his sentence was the lowest within the recommended USSG sentence range calculated for his offense. ECF No. 27, p. 1, 3. Defendant's sentence was determined to be what was necessary under § 3553(a) given his offenses. The Court believes that release at this time would undermine the sentence's need to both reflect the seriousness of Defendant's crimes of methamphetamine distribution and to provide adequate deterrence for future crimes. *See* § 3553(a)(2)(A)-(B). Accordingly, the Court finds that the § 3553(a) sentencing factors weigh against granting Defendant's motion.

### D. Safety Considerations Under 18 U.S.C. § 3142(g)

The Court also finds that the necessary considerations of public safety prevent the Court from granting Defendant's request for release.

The requirement under 18 U.S.C. § 3582(c)(1)(A) that any reduction be consistent with any applicable policy statements issued by the Sentencing Commission necessitates an evaluation of the 18 U.S.C. § 3142(g) safety factors. *See* USSG § 1B1.13(2). The factors for consideration under § 3142(g) are:

> (g) Factors to be considered.-The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-
>
>> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>>
>> (2) the weight of the evidence against the person;

>   (3) the history and characteristics of the person, including-
>
>>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Defendant argues that his release is appropriate in light of the safety considerations because of his good conduct while incarcerated and the stability he expects upon release through employment and residing with his mother. ECF No. 32, p. 13-14. The Court is not persuaded. Defendant's acknowledgement that he has not completed a residential drug treatment program (ECF No. 32, p. 13) during confinement concerns the Court because of his admission that drug use was a typical occurrence in his life prior to his arrest. ECF No. 23, p. 12. This weighs against Defendant under § 3142(g)(3)(A)'s required consideration of Defendant's history relating to substance abuse. The nearly eight-year gap in Defendant's employment history prior to his conviction similarly undermines his motion under § 3142(g)(3)(A). While Defendant states that he has employment with a trucking company lined up for when he is released (ECF No. 23, p. 14), the large gap in his employment history and the absence of direct proof of an employment offer

provided by Defendant creates too much doubt to take the assertion at face value. Finally, Defendant's conviction for distribution of a controlled substance weighs against him under § 3142(g)(1)'s required consideration of the nature and circumstances of his offense. The Court notes Defendant's good behavior and the educational courses he has completed during confinement as well as the stability he expects upon release by living with his mother. However, the Court finds that the concerns regarding his history and the nature of his offense are too high to overcome at this time. Accordingly, the Court finds that it must deny Defendant's motion pursuant to the § 3142(g) safety considerations.

## CONCLUSION

For the reasons stated above, the Court finds that Defendant's motions (ECF Nos. 28 and 32) should be and hereby are **DENIED**.

**IT IS SO ORDERED**, this 29th day of July, 2021.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge